COMMONWEALTH *vs.* WILLIAM WEST.

Suffolk.   November 2, 1942. — November 30, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Witness*, Contradiction, Credibility.   *Evidence*, Competency, Contradiction of witness, Credibility of witness.

It was reversible error, when the defendant at a criminal trial offered evidence of a statement out of court by the principal witness for the Commonwealth which included a reference to a previous conviction of the witness for a crime, to exclude such reference where it helped to make the rest of the statement intelligible and the statement, taken as a whole, tended to contradict the testimony of the witness on a material issue.

INDICTMENT, found and returned on November 6, 1941.

The case was tried before *Higgins*, C.J.

*W. G. Hollingsworth*, for the defendant.

*E. M. Sullivan*, Assistant District Attorney, for the Commonwealth.

Cox, J.   The defendant was convicted on the first indictment of falsely assuming and pretending that he was a police officer and of acting as such, and on the second indictment, which contained two counts, of maliciously threatening to accuse one Sanders of a crime with intent thereby to extort money from him on two occasions.   He was sentenced on the second indictment.

Sanders, who was the "chief government witness," testified to a relationship between the defendant and him which began on the evening of August 29, 1941, and ended October 7, 1941, when the defendant was arrested.   The jury could have found from this testimony that the defendant, a total stranger, approached Sanders on August 29, engaged him in conversation and made indecent proposals to him, which were rejected; that the defendant said that he was a Boston police officer and was going to arrest him, but offered to let him go if he would "post a $50 bond"; that he gave the defendant $15 and was released, paying

the balance of $35 on the following day. Sanders further testified that he met the defendant by appointment eight times in the ensuing five weeks and paid him further sums of money as the result of various stories told him by the defendant; that on October 7 he received a telephone call from a person who represented himself as a brother officer of the defendant and who told him that there was a "further fine" of $25 in his case and made arrangements for him to meet the defendant that afternoon; that about three o'clock he went to police headquarters and complained that the defendant had assumed to be a police officer and had extorted money from him; that $25 in marked bills was given to him; that he met the defendant at the appointed place and had a short conversation with him in which the defendant referred to the alleged telephone conversation of his brother officer; that the marked money was not passed and that the police then arrested the defendant. The defendant, who was a witness, testified that what took place between Sanders and him was substantially different from Sanders's version. His testimony tended to show that Sanders was the mover in the formation of a friendship, which Sanders tried to develop into one of immoral relations.

In cross-examination, Sanders was asked if he did not say to the defendant on October 7: "I'm sorry I have to do this to you Bill, but it's either me or you; I got a 9-month suspended sentence once before for picking up a fellow in the subway." Upon objection, counsel stated that the defendant would testify that there was this conversation at that time and that he was offering it "to establish a prior inconsistent statement by . . . Sanders so as to impeach his credibility." The district attorney stated that this was an indirect way of getting in a criminal record that was otherwise inadmissible, and the question was excluded subject to the defendant's exception. On direct examination of the defendant, the trial judge instructed him that he was not to testify to the alleged conversation "in respect to the portion that related to the alleged suspended sentence of nine months of the complaining witness Sanders." But the judge, "however, did not deny the

defendant the right to contradict Sanders with any other part of this conversation . . . which was otherwise admissible and material to the issue." The defendant's counsel again stated that the conversation was being offered to establish a "prior inconsistent statement by Sanders to impeach his credibility and to discredit him," and took an exception to its exclusion. These two exceptions present the only questions.

It is well settled that the conviction of a witness of a crime can be shown to affect his credibility only by the record of his conviction. *Commonwealth* v. *Danton,* 243 Mass. 552, 554. G. L. (Ter. Ed.) c. 233, § 21. But it is also well settled as a rule of evidence that if a witness, upon either direct or cross-examination, testifies to a fact that is relevant to the issue on trial, the adverse party, for the purpose of impeaching his testimony, may show that the witness has made previous inconsistent or conflicting statements either by eliciting such statements upon cross-examination of the witness himself, or by proving them by other witnesses. *Commonwealth* v. *Hunt,* 4 Gray, 421. *Commonwealth* v. *Early,* 161 Mass. 186. *Commonwealth* v. *Smith,* 163 Mass. 411, 431–432. *Robinson* v. *Old Colony Street Railway,* 189 Mass. 594, 596. *Commonwealth* v. *Homer,* 235 Mass. 526, 532, 533. And it is not necessary that there should be a contradiction in plain terms. It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict. *Commonwealth* v. *Lee,* 143 Mass. 100. *Foster* v. *Worthing,* 146 Mass. 607. *Liddle* v. *Old Lowell National Bank,* 158 Mass. 15. *Langan* v. *Pianowski,* 307 Mass. 149, 151–152. The rule that the extent of cross-examination on collateral issues to test the honesty or credibility of a witness must be left largely to the discretion of the trial judge has no application where alleged contradictory statements of a witness relate to the main issue that is being tried. *Commonwealth* v. *Hunt,* 4 Gray, 421. *Robinson* v. *Old Colony Street Railway,* 189 Mass. 594.

We are of opinion that the evidence in its entirety was admissible. No question of offer of proof is involved, and from the record there can be no doubt that the question was not ruled inadmissible on this account or that the reference to the suspended sentence was not material to the issue. See *Robinson* v. *Old Colony Street Railway,* 189 Mass. 594, 597. The reference to the suspended sentence helps to make intelligible, if it is not required for that purpose, the rest of the statement. It affords some ground for the conclusion that the facts were different from what the jury otherwise might find them to be from Sanders's testimony. The defendant was entitled to have this evidence presented to the jury, and the fact that it contained reference to the commission of another crime by Sanders, in the circumstances, did not make it inadmissible. *Commonwealth* v. *Mason,* 116 Mass. 66. *Commonwealth* v. *Lee,* 143 Mass. 100, 103. *Commonwealth* v. *Johnson,* 150 Mass. 54. *Higlister* v. *French,* 180 Mass. 299, 301. *Smith* v. *Holyoke Street Railway,* 210 Mass. 202, 205. *Commonwealth* v. *Fortier,* 258 Mass. 98, 101, 102. See *Commonwealth* v. *Patalano,* 254 Mass. 69, 73, 74; *Commonwealth* v. *Mercier,* 257 Mass. 353, 368; *Commonwealth* v. *Britland,* 300 Mass. 492, 495, 496.

The purpose of such evidence, when properly admitted, and its force and effect are usually explained to the jury in the charge of the trial judge.

*Exceptions sustained.*