Mary C. McGeorge *vs.* The Grand Realty Trust, Inc.

Suffolk.    April 10, 1942. — June 5, 1944.

Present: Field, C.J., Lummus, Qua, Dolan, Ronan, Wilkins, & Spalding, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or his family or his invitee, Common stairway, Snow and ice. *Practice, Civil,* Discretionary control of evidence, Argument by counsel. *Evidence,* Failure to produce evidence. *Snow and Ice.*

Evidence that the janitor in charge of cleaning outside steps of a common entrance of an apartment building first observed a leaky condition of a gutter from which water dripped onto one of the steps four months after the letting of an apartment to a tenant and notified an agent of the landlord, and that about three months after such condition was observed the tenant was injured by falling on an unnatural accumulation of ice on that step warranted an inference that the leaky condition of the gutter first arose at the time it was so observed and warranted a finding that the landlord had failed in his duty to the tenant to use reasonable care to keep the gutter in as good condition as it was or appeared to be in at the time of the letting.

A landlord of an apartment building was not relieved of liability to a tenant, who sustained a fall on ice caused by water dripping from a leaky gutter to a common entrance, merely because the condition of the gutter resulted from deterioration after the letting.

After the defendant's counsel had sought to offer in evidence a written statement to contradict a witness for the plaintiff whom he was cross-examining and had stated to the judge that he would produce the person who took the statement from the witness, a ruling by the judge that he would postpone determination of the admissibility of the statement and would not permit it to be offered until that person should be produced was a permissible exercise of discretion in control of the order of proof and disclosed no error.

No error appeared in a refusal by a trial judge to permit an argument commenting on the absence of witnesses who apparently had knowledge of facts material to an issue on trial, where it did not appear that the witnesses were available.

Tort.    Writ in the Municipal Court of the South Boston District dated October 18, 1938.

Upon removal to the Superior Court, the case was tried before *Hurley,* J.

In this court the case was argued at the bar in April,

1942, before *Field*, C.J., *Donahue, Dolan, Cox,* & *Ronan,* JJ., and after the retirement of *Donahue* & *Cox,* JJ., was submitted on briefs to *Lummus, Qua, Wilkins,* & *Spalding,* JJ.

*J. G. Ashe,* for the defendant.

*J. T. Doherty,* (*A. C. Rome* with him,) for the plaintiff.

WILKINS, J.   This is an action of tort by a tenant in an apartment house against her landlord for personal injuries sustained from a fall on an unnatural accumulation of ice on the steps of a common entrance to the building due to alleged negligent maintenance of a gutter.   The jury returned a verdict for the plaintiff.

1. One of the defendant's exceptions was to the denial of a motion to direct a verdict in its favor.   This ruling was right.   On the evidence most favorable to the plaintiff the following could have been found: The building contained four apartments, and in May, 1937, the plaintiff became a tenant of the apartment on the second floor.   On January 2, 1938, following a heavy rain and sleet storm, the plaintiff ascended "the outside flight of stairs, which was the main stairway, the principal front way for getting into the house."   There was a thin coating of ice on the steps.   When "she got up to the thirteenth step and went to reach for the door, there was a hard lumpy coating of ice in the center" of the step "not at all like what it was on the other steps; . . . the lumpy ice extended from about one foot and a half to two feet from the rail on the right over to about one foot or a foot and a half on the step."   She lost her balance and fell.   A Mrs. Miller, the janitor of the building for more than a year before January, 1938, had charge of cleaning and shoveling the front stairway.   On the evening of January 1, 1938, she observed that "on the thirteenth step there was a hard, rough, lumpy coating of ice about three inches thick."   Both at that time and on the following day Mrs. Miller noticed that a gutter under the windows on the top floor was dripping down onto a small, narrow porch roof over the front door, and then down onto the thirteenth step.   The first time that Mrs. Miller had noticed this dripping was in September or October,

1937, and "through that fall and during the whole winter it did that." Mrs. Miller brought this to the attention of an agent of the defendant. At the place where Mrs. Miller "noticed the dripping from the gutter, she noticed the gutter was rotted; that the rot extended for a distance of more than two feet; that she did not know whether the gutter was wood or metal but believed it was metal."

The defendant's duty to the plaintiff was to use reasonable care to keep the gutter in as good a condition as that in which it was or appeared to be at the beginning of the tenancy. *Rogers* v. *Dudley Realty Corp.* 301 Mass. 104, 105, and cases cited. See *Sneckner* v. *Feingold,* 314 Mass. 613, 614; *Sullivan* v. *Belding,* 315 Mass. 701, 703. While there was no direct evidence whether the rotted condition existed. in May, 1937, at the time of the letting, or how long before September or October, 1937, it first appeared, the jury could warrantably infer that it first became so rotted as to permit dripping at the time when Mrs. Miller, whose duty it was to take care of the steps, first noticed it. *Silver* v. *Cushner,* 300 Mass. 583, 586. *Shwartz* v. *Feinberg,* 306 Mass. 331, 334–335. The defendant is not exonerated because the condition resulted from deterioration. *Griffin* v. *Rudnick,* 298 Mass. 82, 86. *Rogers* v. *Dudley Realty Corp.* 301 Mass. 104, 106–107. The jury could have found that the defendant had sufficient notice to permit repairs before the plaintiff was injured. See *Silver* v. *Cushner,* 300 Mass. 583, 586. It also could have been found that independently of notice the defendant should have discovered and remedied the defect. *Chambers* v. *Durling,* 306 Mass. 327, 331.

2. One of the defendant's exceptions related to the exclusion on cross-examination of a signed statement of Mrs. Miller, who was called as a witness for the plaintiff. It appeared that this statement, which was inconsistent in material respects with her direct testimony, had been written out by a man who interviewed her on January 25, 1938. Under examination by counsel for the defendant she testified that before signing she understood it, that it was true, but that she did not remember the name of the man

or exactly what she said. Counsel for the defendant stated in response to a question by the judge that he would produce the man who took the statement. After some further questions about the contents of the statement counsel for the defendant offered it in evidence. The following colloquy occurred: "The JUDGE: Are you going to produce the man that took the statement? You said you would. COUNSEL FOR THE DEFENDANT: We will produce him, but I don't think it makes any difference as far as the admissibility of this is concerned. The JUDGE: When he is produced I will permit you to offer it at that time. COUNSEL FOR THE DEFENDANT: May I offer it now without producing him? The JUDGE: No. COUNSEL FOR THE DEFENDANT: My exception, your Honor. The JUDGE: You have a right to offer it when you produce him. COUNSEL FOR THE DEFENDANT: I would like to offer it and read it now while this witness is here in the court room and on the stand. The JUDGE: I will permit you to do it at the time I suggested." From remarks of the judge in the presence of the jury at the close of the evidence it appears that at some later time the defendant's counsel informed the judge in the lobby that for reasons of his own he was not going to produce this man. This exception fails to show error. There is no question but that it is "well settled as a rule of evidence that if a witness, either upon direct or cross-examination, testifies to a fact that is relevant to the issue on trial, the adverse party, for the purpose of impeaching his testimony, may show that the witness has made previous inconsistent or conflicting statements either by eliciting such statements upon cross-examination of the witness himself, or by proving them by other witnesses." *Commonwealth* v. *West,* 312 Mass. 438, 440, and cases cited. It is also true that, where the contradictory statements concern the main issue tried, admissibility is not within the rule leaving the extent of cross-examination largely to the discretion of the trial judge. *Commonwealth* v. *Hunt,* 4 Gray, 421, 423. *Robinson* v. *Old Colony Street Railway,* 189 Mass. 594, 596. *Commonwealth* v. *West, supra,* at page 440. It is equally true, however, that "there is a time and place for the introduction of

such contradictory evidence and, in the orderly conduct of a trial, much must be left to the sound discretion of the judge." *Perrott* v. *Leahy*, 302 Mass. 318, 322. As long as the defendant's counsel did not withdraw his promise to produce as a witness the man who took the statement, the offer was subject to the controlling principle that the order of proof was within the discretion of the trial judge, who in the course of events did not rule against the admissibility of the evidence, but in substance indicated that he would pass upon this question when the other witness should testify. *Sullivan* v. *Brabason*, 264 Mass. 276, 284. *Milliken* v. *Warwick*, 306 Mass. 192, 195–196. Undoubtedly the defendant's counsel could change his position with respect to calling this witness in the circumstances. See *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 252–253. He did not do so while Mrs. Miller was on the stand. The inquiry, "May I offer it now without producing him?" did not amount to that, and the paper was never reoffered after the change of position was communicated to the judge outside the court room, apparently at the close or near the close of the evidence.

3. Certain exceptions to the exclusion of questions asked Mrs. Miller on cross-examination are without merit. One question as to what "was apparent" to the witness as to the condition of the sidewalk and another as to whether it "was apparent" to the witness it was "icy everywhere," were wholly immaterial, and were at most within the discretion of the judge. His refusal to allow an offer of proof respecting one of these questions was not error. Compare *Stevens* v. *William S. Howe Co.* 275 Mass. 398, 402. Three other questions related to the signed statement and were of no weight without it. They also were all objectionable for one reason or another.

4. Other exceptions relate to the refusal of the judge to allow the counsel for the defendant to comment in argument on the absence of the plaintiff's husband and son, who lived with the plaintiff at the time of the accident. The son, whose age does not appear, apparently was a witness to the plaintiff's fall, and the plaintiff testified that following

the accident she sent both husband and son out to ascertain on what step she had fallen. This ruling was not erroneous. It did not appear whether either of them was available as a witness. *Heina* v. *Broadway Fruit Market, Inc.* 304 Mass. 608, 611. *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 222. See *Fitzpatrick* v. *Boston Elevated Railway,* 223 Mass. 475, 477; Wigmore on Evidence (3d ed.) § 286. In *Commonwealth* v. *Spencer,* 212 Mass. 438, 452, the defendant's wife was in the court room. "The practice of permitting counsel to comment on the failure of the opposing party to call witnesses to facts needs to be used with caution, and such comment should be permitted only where it appears that the witnesses could have been produced, and that it is a fair inference from the conduct of the party, under all the circumstances, that he knew or believed that the testimony of the witnesses would be adverse, and for that reason did not produce them." *McKim* v. *Foley,* 170 Mass. 426, 428.

The remaining exceptions arising during the argument of counsel for the defendant have been considered and are without merit.

*Exceptions overruled.*