COMMONWEALTH *vs.* STEPHEN L. MABEY.

Suffolk.     October 4, 1937. — December 27, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Practice, Criminal,* Confession, Mistrial. *Evidence,* Confession; Opinion: expert.

A trial judge's decision to admit in evidence, after a preliminary hearing, an alleged confession by one indicted for murder, disclosed no error even if the alleged confession was made during a period of undue delay in bringing the defendant to trial, the defendant was not warned that anything he might say might be used against him, and police officers previous thereto had advised the defendant that he tell the truth and that "it was better for him to tell the whole truth."

After an alleged confession by a defendant on trial for murder had been admitted in evidence following a preliminary hearing by the trial judge, the defendant could not require the judge to review such decision on a motion for a directed verdict at the close of the evidence.

The mere facts that during the course of a trial for murder the jury communicated with the judge suggesting a later closing hour, and that the foreman in a conference at the bench with the judge stated, "We are beginning to get kind of jumpy" and "are just dying to get out," did not require the granting of a request that a mistrial be declared.

No prejudicial error appeared in the admission at the trial of an indictment for murder of certain questions to and answers by the defendant which led up to an alleged confession.

It was proper on cross-examination of an expert witness to exclude a question based upon a supposititious fact contrary to all the evidence at the trial.

The admission of the opinion of an expert witness, based upon the testimony of a previous expert and upon his own investigation of facts, was proper although not in answer to a question hypothetical in form.

INDICTMENT for murder, found and returned to the Superior Court on March 12, 1936.

The indictment was tried before *Fosdick*, J. The defendant was found guilty of murder in the second degree and filed an appeal with assignments of error.

*J. M. Boyle*, for the defendant.

*F. T. Doyle*, Assistant District Attorney, for the Commonwealth.

LUMMUS, J. On Sunday evening, January 26, 1936, Mildred L. Bosse, aged twenty-eight, wife of Clifford N. Bosse, was found dead in her apartment. Her death was caused by potassium cyanide. The defendant, a man of fifty-five, admittedly had been alone with her in her apartment during the morning, drinking liquor with her. Apparently he was the last person to see her alive. After he was arrested, the defendant told various stories. The first was that the woman was despondent and threatened suicide, and thereupon he went home. The second was that while he was with her she apparently took poison and fell, whereupon he put her body on the bed and went home. The third was that he had bought potassium cyanide for the woman upon her representation that she wished to use it in killing a horse, and had delivered it to her, but that he did not know she had taken it herself until she cried "I done it" and fell; and that he believed her dead when he put her body on the bed and went home. Finally he confessed to police officers that he carried the poison to her apartment and then decided to administer it to her, that he "gave it to her in a glass of whiskey" because he was "mad at her" and jealous of her, and that she did not cry out "I done it."

The first assignment of error assails the admission in evidence of that confession. The defendant testified on the preliminary hearing before the judge, held for the purpose of determining the admissibility of that confession, that confinement had made him hungry, ill and weak, that the officers called him foul names and threatened him with a club, and that these facts caused him to make what statements he did make in order to end the questioning. He

denied confessing to murder, but shortly afterwards testified that he had confessed. The judge was not bound to give credit to any of this testimony of the defendant. *Commonwealth* v. *Russ*, 232 Mass. 58, 70. If, as the defendant contends, there was undue delay in bringing him before a court, that would not make inadmissible a confession made during the period of delay. *Commonwealth* v. *DiStasio*, 294 Mass. 273, 284. Neither was the confession inadmissible because the defendant was not warned that anything he might say might be used against him. *Commonwealth* v. *Buck*, 285 Mass. 41, 47. The testimony of the police officers showed no impropriety in the taking of the confession unless certain forms of language used by some of the officers made the confession inadmissible.

The nearest approach to improper inducements held out to the defendant were these words used by some of the police officers at different times in the course of the examination of the defendant at the police station: "You are not telling the truth, give us the truth on this"; "You might as well tell the truth to me now"; "I advise you to tell the truth in this case"; and the admission by one officer that he told the defendant that "it was better for him to tell the whole truth." None of these words amount, as matter of law, to a threat or promise or inducement invalidating the confession. The question of fact was for the trial judge. *Commonwealth* v. *Russ*, 232 Mass. 58, 69. *Coghlan* v. *White*, 236 Mass. 165, 168. "Whether specific language amounts to a threat or a promise may depend . . . upon the circumstances in which the language is used and on warrantable inferences drawn from the language and circumstances. . . . This is true even of such language as 'You had better tell the truth.'" *Commonwealth* v. *Sherman*, 294 Mass. 379, 395. See also *Commonwealth* v. *Tuckerman*, 10 Gray, 173; 2 Wigmore, Evidence (2d ed.) §§ 832, 838, 840. The context of the words in question is not suggestive of any promise, or any appeal to the defendant that he would serve his own interest by confessing the crime as distinguished from making a full disclosure of the facts in his possession. There was no error

of law in the admission in evidence of the confession. The first assignment of error is not sustained.

The confession having lawfully become part of the evidence in the case, subject to the exception of the defendant and to a review by the jury of the facts material to its admissibility (*Commonwealth* v. *Polian*, 288 Mass. 494, 498; *Commonwealth* v. *Sherman*, 294 Mass. 379, 394), the defendant at the close of the evidence could not require the judge himself to review his decision that the confession was admissible by asking him to direct a verdict for the defendant on the ground that the confession was inadmissible and that the evidence, without the confession, was insufficient to warrant a verdict of guilty. *Nerbonne* v. *New England Steamship Co.* 288 Mass. 508, 510. Even if the confession had been wholly without corroboration in the other evidence, the case would have been proper for the consideration of the jury. *Commonwealth* v. *DiStasio*, 294 Mass. 273, 286. For these reasons the seventh assignment of error is not sustained.

On April 14, 1937, during the trial the jury sent the following note to the judge: "In view of the fact that Monday next is a holiday and confinement of our nature at best is trying, though it is our civic duty, may we respectfully request that the day's business be continued to 5.00 p.m., if it does not inconvenience the Court and the other interested parties. While we are appreciative and mindful of the many considerations shown us, we ask that this request be honored, that our liberty be more hastily restored." Counsel for the defendant, as well as the prosecuting attorney, told the judge at a conference at the bench that there was no objection to sitting until five o'clock. The judge then called the foreman to the bench and told him of the decision to comply with the request of the jury. During the discussion the foreman said, "We thought it would be nice for everybody, because we are beginning to get kind of jumpy." The judge answered, "I don't wonder." Later in the discussion the foreman said, "We are just dying to get out." The trial was not finished before

the holiday, and it had to be adjourned until April 20, 1937. There was no error in refusing to declare a mistrial because of these incidents. It does not appear that the jury were unable or unwilling to give full and careful consideration to the evidence. The sixth assignment of error is not sustained.

The second assignment of error relates to questions to the defendant preceding and during his confession, and his answers to them, as shown by a stenographic report of his examination by police officers. The defendant contends that the questions suggested facts adverse to him, that his answers were unequivocal denials of the suggestions, and that consequently the questions and answers were not admissible in evidence as admissions on his part. But the suggestions in the questions as to facts not already admitted by the defendant were very slight and weak, and the denial of such suggestions was not always unequivocal. The judge was extremely scrupulous in excluding all that might prejudice the defendant. No one reading or hearing the questions and answers could think that the examining officers pretended to any knowledge of the facts not obtained from the defendant in the examination. This is not a case where the hearsay assertion of a police officer or other person, unequivocally repudiated by a defendant, is left in the evidence for the consideration of the jury, as in *Commonwealth* v. *Kosior*, 280 Mass. 418, 422, *Commonwealth* v. *Polian*, 288 Mass. 494, 496, and *Commonwealth* v. *Osman*, 289 Mass. 388, 390. The questions and answers led up to a full confession, and were important to the Commonwealth and to the defendant only as they bore upon his state of mind in confessing. Without· reciting the questions and answers in detail, it is enough to say that there is no reason to think that the defendant was prejudiced by their admission. The second assignment of error is not sustained.

The Commonwealth called as an expert witness a toxicologist employed by the Boston police department. He testified that he found in the organs of Mildred Bosse enough potassium cyanide to cause death. He testified that the contents of the stomach were practically neutral as to alka-

linity or acidity, but on the alkaline side if on either. He testified that most people have traces of hydrochloric acid in the stomach, not more than two tenths of one per cent; but that as the contents of the stomach in question were neutral or alkaline, he made no tests for the particular kind of acid called hydrochloric acid. The defendant asked him on cross-examination what would have been the results of his tests if there had been hydrochloric acid in the contents of the stomach. The defendant disclaimed having any evidence that there was any hydrochloric acid there, except that he expected some witness to testify that there must have been. The defendant does not contend that any such witness was called, at that time or later. The exclusion of the question was proper. It related to a purely supposititious fact contrary to what all the evidence showed to be the actual fact. Later, an expert physician, who had been present during the testimony of the toxicologist and had heard the details of the tests as related by him in his testimony, was allowed to testify that upon that testimony and upon his own examination and autopsy he was of opinion that the woman died of poisoning by potassium cyanide. The admission of this opinion was proper. Under the circumstances it was not necessary that the question to the witness should be hypothetical in form with respect to the truth of the facts contained in the testimony of the toxicologist. *Commonwealth* v. *Russ*, 232 Mass. 58, 73. For these reasons the third and fourth assignments of error are not sustained. The fifth assignment of error is expressly waived.

The eighth assignment of error relates to the refusal to give requested instructions to the jury. This is not argued, and therefore is waived. *Boston* v. *Dolan*, 298 Mass. 346, 355. But it is proper to say that in our opinion the defendant lost nothing of value by the waiver. The verdict of guilty of murder in the second degree and the sentence of life imprisonment were rendered without error of law.

*Judgment affirmed.*